In re Marriage of Bowlby

(text box: 1) NO. 5-01-0869

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

In re
 MARRIAGE OF ALISHA BOWLBY, )  Appeal from the

)  Circuit Court of

     Petitioner-Appellant, )  Jackson County.

) 

and )  No. 00-D-200

)

WILLIAM MATTHEW BOWLBY, )  Honorable

   )  David W. Watt, Jr.,

     Respondent-Appellee. )  Judge, presiding.

__________________________________________________________________________

PRESIDING JUSTICE HOPKINS delivered the opinion of the court:

The petitioner, Alisha Bowlby, appeals the trial court's judgment dissolving her marriage with the respondent, William Matthew Bowlby (Matthew).  On appeal, Alisha asserts that the trial court erred because it failed to award growing crops to either party and because it denied Alisha's pretrial motion to bar evidence concerning Matthew's debt to his father, Robert Bowlby.  Alisha also contends that the trial court abused its discretion when it divided the marital assets, awarded child support, and denied Alisha's petition for attorney fees.  We affirm as modified.

FACTS

Alisha and Matthew were married on August 1, 1992, and resided together for eight years until Alisha moved from the marital residence on August 15, 2000, and filed for a dissolution of their marriage on August 18, 2000.  Two children were born from the parties' union.  At the time of the judgment, Alisha was 26 years old and Matthew was 28 years old.

During the parties' marriage, Matthew worked as a farmer, and during the summer of 1995, Matthew also worked at Asplundh Tree Service.  Matthew and Robert farm together, although they own separate farming entities.  During most of the marriage, Alisha did not work outside of the home.  In 1999 she periodically worked at Asplundh Tree Service.  After May 2000, Alisha became a full-time groundsman at Asplundh Tree Service and received a gross income of $16,394.58 for the year.

The parties' adjusted gross incomes during their marriage, as revealed by their 1998, 1999, and 2000 tax returns, was $9,141, $13,284, and $12,195, respectively.  In 1999 and 2000, the parties' cash-rented or leased acreage increased from 700 acres to 1,175 acres, and the crops at the time of the judgment consisted of 400 acres of corn and 775 acres of beans.  Grain sales of 1999 and 2000 crops in 2000 totaled $155,918, and government payments through various agricultural programs totaled $25,053.  Deducting farm expenses of $167,849, the parties' net profit for 2000 equaled $13,122.  The parties stipulated to the following values for the parties' marital assets:

1993 Freightliner truck/tractor $13,500 to 14,000 

Kinze 2600 23-row planter $36,000 to 36,500

John Deere soil conditioner $13,500 to 14,000

John Deere field cultivator $11,000 to 12,000

Farm King swing-away auger $  2,550 to   2,750

1999 GMC Yukon utility truck $20,400

1995 Dodge Ram truck $10,300

At the hearing, Alisha offered into evidence statements prepared by Matthew to secure financing.  In the statements, Matthew listed the value of the parties' mobile home as $12,000 and $14,000, exceeding Matthew's submitted value of $9,500.  Alisha also introduced statements in which Matthew estimated the value of the parties' grain bin as $15,000, even though Matthew's submitted appraisal and depreciation schedule at the hearing indicated a value of $6,450.  In the statements, Matthew also listed various farming equipment as collateral, which, as Matthew and Robert explained, Matthew did not own but listed as collateral with the permission of Robert, who owned the equipment.

The record revealed the following marital debt:

Old National Bank secured by GMC Yukon $21,766.56

Old National Bank secured by field cultivator $12,305.57

Fifth Third Bank secured by grain bin $  9,989.15

Fifth Third Bank farm operating loan $50,929.17

Farm Service Agency secured by Freightliner, $66,538.26

planter, and conditioner

Monsanto balance due from 2000 $11,052.42

Greenpoint Credit secured by 1988 mobile home $  5,022.00

John Deere balance of lease for ag tractor $34,500.00

Batavia Leasing Company balance of lease for grain cart $16,216.00

IRS deficiency on taxes $  2,353.00

Landlord cash rent due (2000 tax return) $53,599.00

Alisha filed a pretrial motion to bar evidence of debt to Robert because Matthew had failed to properly comply with discovery.  The trial court denied Alisha's motion, and at the hearing, Robert explained that he prepays crop inputs for the following year, Matthew uses the fertilizers, seed, and chemicals, and Matthew repays Robert after harvesting the crop.  Robert entered into evidence a handwritten list that indicated expenses for the fertilizer, seed, chemicals, and equipment repairs and that revealed that Matthew owed Robert $9,000 for 2000 crop expenses.  Robert explained that he expects repayment by Matthew at the end of the 2001 harvest.  Robert further testified that he loaned Matthew and Alisha $3,282.04 to redeem the Yukon truck that had been repossessed by the bank. 

Matthew resided in the parties' marital residence, a mobile home located on Robert's property.  Although title remained in Matthew's name, Robert paid the monthly payments to provide Matthew with better access to farming activity. 

Matthew paid approximately $4,000 for attorney fees and costs during a criminal proceeding and during the divorce proceeding.

Prior to the hearing, Alisha filed a petition for the contribution of interim attorney fees on May 15, 2001, which the trial court denied on May 22, 2001.  At the hearing, Alisha attempted to introduce an evidence deposition, revealing an operating-loan debt that Matthew did not disclose in discovery, and asserted that the deposition reflected a pattern of withholding discovery and supported her petition for attorney fees.  The trial court denied Alisha's request to introduce the deposition.

During the hearing, the trial court rejected as unconvincing Alisha's evidence concerning the equipment and values listed on the financial statements.  In its judgment, the trial court awarded the custody of the two children to Alisha and ordered Matthew to pay $300 per month for child support.  The court held that the 120 billable hours of Alisha's counsel was unreasonable given the nature of the proceedings and the situation of the parties, and it denied Alisha's request for attorney fees.  The court awarded Alisha the 1995 Dodge Ram pickup truck, free of debt, and assigned Alisha all debts held in her name.  The court awarded Matthew all personal property in his possession, all farming equipment, the mobile home, the Yukon truck, and the four-wheeler.  The court assigned to Matthew his personal debt and the debt associated with the farm, the mobile home, and the Yukon truck.

On November 2, 2001, Alisha filed her timely notice of appeal.

ANALYSIS

Division of Marital Assets

Alisha argues that the trial court abused its discretion because its division of marital assets was unjust, failed to account for Matthew's dissipation of assets, relied on Matthew's inadmissible hearsay and self-serving, undocumented assertions, and failed to provide the parties with comparable opportunities for the future acquisition of capital assets and income.  We disagree.

A trial court's distribution of marital property should not be reversed absent an abuse of the trial court's discretion, 
i.e.
, where no reasonable person could adopt the trial court's position.  
In re Marriage of Schmidt
, 242 Ill. App. 3d 961, 966 (1993).  The touchstone of the apportionment of marital property is whether the distribution is equitable in nature.  
In re Marriage of Schmidt
, 242 Ill. App. 3d at 966.  Section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Act) provides that marital property shall be divided in "just proportions" considering all relevant factors.  750 ILCS 5/503(d) (West 2000).  "Just proportions" does not mean equal amounts, and the trial court is not obligated to make specific findings as the reasons for its award.  
In re Marriage of Schmidt
, 242 Ill. App. 3d at 966.  We do not consider the fairness of the distribution of marital assets on a piecemeal basis but determine if the distribution as a whole is in just proportions.  
In re Marriage of Steele
, 212 Ill. App. 3d 425, 432 (1991).

The trial court awarded the following:

Assets Value Alisha Matthew

Matthew's personal property $   1,075 $   1,075

Alisha's personal property $      975 (approx.)   $     975

Fifth Third Bank account $ 28,500 $ 28,500 

First National Bank account $      838           $      838

First National Bank account $   1,400          $   1,400

1995 Dodge Ram pickup $ 10,300          $ 10,300

Farm equipment $ 83,000 (approx.) $ 83,000

Freightliner $ 13,500 to 14,000 

row planter $ 36,000 to 36,500

conditioner $ 13,500 to 14,000

cultivator $ 11,000 to 12,000

auger $   2,550 to   2,750

grain bin $   6,450

Mobile home $   9,500 $   9,500

Yukon $ 20,400 $ 20,400

Four-wheeler 
$   1,000
 
            
 
$   1,000

TOTAL ASSETS $156,988 $ 12,675 $144,313

Liabilities 
 

Farm debt, including equipment, $264,129.57 $264,129.57

Monsanto balance,

operating expenses, 

and $9,000 debt

to Robert 

1999 GMC Yukon truck $  21,766.56 $  21,766.56

Robert  (repossess Yukon)           $    3,282 $    3,282

Mobile home $    5,022 $    5,022

IRS 
$    2,353    
 
              
 
$    2,353    

TOTAL DEBT $296,553.13 $          0 $296,553.13

TOTAL NET ASSETS $  12,675                $(152,240.13)

Alisha asserts that the total value of Matthew's assets was greater than indicated because it included farm equipment that Matthew undervalued or denied owning.  Credibility is an issue for the trial court (
Chicago Investment Corp. v. Dollins
, 107 Ill. 2d 120 (1985)), and the trial court did not err in relying on Matthew's purported values, in rejecting Alisha's purported values, or in determining that Matthew listed as collateral farm equipment owned solely by Robert.

Assuming Matthew dissipated assets in the asserted value of $4,000 (his attorney fees), the trial court allocated Matthew great liability in comparison to Alisha.  We do not consider the fairness of the distribution of marital assets on a piecemeal basis but determine if the distribution as a whole is in just proportions.  
In re Marriage of Steele
, 212 Ill. App. 3d at 432.  The trial court did not abuse its discretion in failing to allocate additional funds to Alisha for Matthew's dissipation of assets.  See
 Head v. Head
, 168 Ill. App. 3d 697, 702-03 (1988). 

Even if we were to accept Alisha's asserted personal debts of $18,600, $3,600 of which Alisha claimed as the use of her father's truck, the trial court did not abuse its discretion in distributing the marital property, and Alisha's arguments are unavailing.  The trial court's award was in "just proportions."  See 750 ILCS 5/503(d) (West 2000). 

Growing Crops

Alisha argues that the trial court erred in failing to award to either party 1,175 acres of the 2001 growing crops.  Alisha calculates the crops at a net value, after expenses, of $124,394.23, and Alisha requests this court to award her half of that value.  We decline to do so.  

Future income is a marital asset where the income derives from efforts or products produced during the marriage.  
In re Marriage of Heinze
, 257 Ill. App. 3d 782, 785 (1994).  Crops grown even on nonmarital property can be considered in determining marital income and marital property.  
In re Marriage of Mohr
, 260 Ill. App. 3d 98, 103 (1994).  Farm income derives from the sale of crops, and the labor may precede the income by many months.  
In re Marriage of Mohr
, 260 Ill. App. 3d at 104.  In farming, the income–the yield and the price–is uncertain and beyond control.  
In re Marriage of Mohr
, 260 Ill. App. 3d at 104.  

The future income from the growing crops derived from Matthew's efforts during the marriage is marital property.  In its judgment, the trial court did not allocate the future income of the growing crops.  However, the trial court allocated the considerable farming debt to Matthew, including the debt incurred to produce the crops, and Matthew will incur the debt to harvest the crops.  

The value of the growing crops is speculative, as is the farming business.  Alisha values the crops at $124,394.23 and argues that awarding the entire future income from the growing crops to Matthew results in a greatly disproportionate award.  However, Alisha's purported value ignores the previous year's crop income of $13,122 and is therefore untenable.  Further, even if Alisha's purported value was accepted and added entirely to Matthew's distribution award in the judgment, Matthew's net income after distribution remains in the negative while Alisha's remains in the positive.  After Matthew is awarded the entirety of the 2001 growing crop, the distribution remains equitable in nature and in just proportions.  See 750 ILCS 5/503(d) (West 2000).  Pursuant to our powers under Supreme Court Rule 366(a) (155 Ill. 2d R. 366(a)), we modify the trial court's order and award the future income from the 2001 growing crops to Matthew.  See 
In re Marriage of Smith
, 122 Ill. App. 3d 213, 217 (1984) (farm debts and assets should remain in one person).

Matthew's Debt to Robert

Alisha next argues that Matthew's persistent refusal to produce explicit documentation concerning the debt owed to Robert deprived her of the opportunity to check the accuracy of the claim and that, therefore, the trial court erred when it allowed Robert to testify concerning the debt.  We disagree.

Under Supreme Court Rule 219(c) (166 Ill. 2d R. 219(c)), a trial court may bar testimony or other evidence if one party unreasonably refuses to comply with the relevant discovery rules, so long as the sanction imposed is just.  
Shelbyville Mutual Insurance Co. v. Sunbeam Leisure Products Co.
, 262 Ill. App. 3d 636, 641 (1994).  "The decision of whether to impose sanctions pursuant to Rule 219(c) [citation] and, if so, the type of sanction[] is largely within the sound discretion of the trial court, and that decision will not be disturbed absent a clear abuse of discretion."  
Shelbyville Mutual Insurance Co.
, 262 Ill. App. 3d at 641.

Alisha filed a pretrial motion to bar evidence of Matthew's debt to Robert on the basis of Matthew's discovery abuses.  The trial court denied the motion, and at the hearing, Robert testified that Matthew owed him $9,000 for 2000 crop expenses, and Robert provided a handwritten list of items he had supplied to Matthew, along with quantities and values.  Contrary to Alisha's assertion, the record reveals that Matthew did not act contumaciously in failing to disclose evidence prior to the hearing, and the trial court's refusal to bar the evidence was not an abuse of discretion.

Child Support

Alisha asserts that the trial court abused its discretion in awarding child support because it failed to account for Matthew's parents' assistance, Matthew's standard of living, and Matthew's earning potential.  We disagree.

The trial court may order a supporting parent to pay child support in an amount that is reasonable and necessary for the child's well-being.  750 ILCS 5/505(a) (West 2000).  The award of child support lies within the sound discretion of the trial court and will not be set aside absent an abuse of that discretion, 
i.e.
, where no reasonable person would take the view adopted by the trial court.  
In re Marriage of Partney
, 212 Ill. App. 3d 586, 590 (1991).  The factors to be considered in exercising that discretion are set forth in section 505(a)(2) of the Act.  750 ILCS 5/505(a)(2) (West 2000).  Generally, the Act guides the trial court to award 25% of the supporting party's net income to support two children.  750 ILCS 5/505(a)(1) (West 2000).  When the supporting parent's income fluctuates, the court may reasonably average income for the previous three years to determine child support.
  In re Marriage of Nelson
, 297 Ill. App. 3d 651, 655 (1998) (trial court properly averaged three years of farmer's income to determine income for purposes of child support). 

In this case, the trial court had wide discretion to ensure that the needs of the minor children were met, and the trial court did not abuse its discretion in awarding child support payments of $300 per month.  The parties' joint tax returns for 1998, 1999, and 2000 revealed yearly total incomes of $9,141, $13,284, and $12,195, respectively.  The average income for the three years was $11,540 per year, or $961.67 per month, 25% of which equaled a child support payment of $240.42.  The trial court was within its discretion in awarding child support payments of $300 per month.

Citing 
In re Marriage of Sweet
, 316 Ill. App. 3d 101 (2000), Alisha contends that Matthew's choice to farm, earning less than $15,000 per year, should not be at the expense of the parties' children.  Alisha asserts that because Matthew worked for Asplundh Tree Service for three months in the summer of 1995 and because his health allows him to custom combine or custom spray for pay, he should be charged with greater income for purposes of child support.

In 
In re Marriage of Sweet
, the trial court increased the respondent's child support obligation, noting that the respondent entered an enterprise producing little income and either misrepresented his income or willfully refused to support his children. 
In re Marriage of Sweet
, 316 Ill. App. 3d at 107.  The respondent became self-employed after the original dissolution proceedings, made less each year after the divorce, and did not act in good faith when making the career change.  
In re Marriage of Sweet
, 316 Ill. App. 3d at 107.

Unlike 
In re Marriage of Sweet
, Matthew has supported his family by farming throughout the parties' marriage, and no evidence suggests he acted in bad faith while continuing to farm.  Matthew testified that he did not have the equipment to custom spray and custom combine, and we dismiss Alisha's suggestion that because Matthew is in good health, he should pursue employment with Alisha's employer to earn greater income.

Citing 
In re Marriage of Heil
, 233 Ill. App. 3d 888 (1992), Alisha asserts that Robert's assistance, paying for Matthew's mobile home, redeeming the Yukon truck, paying for a vacation to Las Vegas, and allowing the use of his equipment at no cost, should be considered to increase Matthew's child support.  We reject Alisha's argument concerning the redemption of the Yukon truck and the use of equipment because the record reveals that Matthew's father expects payment for these items, and the trial court awarded liability for these items to Matthew in its judgment.  

In 
In re Marriage of Heil
, to determine income for child support purposes, the trial court considered benefits, including a hunting lodge and the payment of taxes and insurance for the hunting lodge, that the respondent received from his company.  
In re Marriage of Heil
, 233 Ill. App. 3d at 889.  Unlike 
In re Marriage of Heil
, however, Matthew's and Robert's farming entities are separate so that the gifts, including the vacation to Las Vegas and payment for the mobile home, derived from Robert personally.  Alisha fails to cite authority to support the proposition that gifts are to be considered when a court determines net income for child support purposes.  See 
In re Marriage of Harmon
, 210 Ill. App. 3d 92, 95 (1991).

Attorney Fees

Alisha argues that the vast majority of her attorney's expenses were caused by Matthew's lack of cooperation and that the trial court incorrectly restricted Alisha's evidence on this issue.  We disagree.

Section 508 of the Act provides that the court, after considering the financial resources of the parties,  may order either party to pay attorney fees.  750 ILCS 5/508 (West 2000).  An award of attorney fees in a dissolution proceeding rests in the sound discretion of the trial court, and we will reverse only for an abuse of discretion.  
In re Marriage of Hillebrand
, 258 Ill. App. 3d 835, 841 (1994).  

To justify an award of attorney fees, the party seeking such an allowance must establish an inability to pay those fees and the ability of the other spouse to do so.
  In re Marriage of Uphoff
, 80 Ill. App. 3d 145, 147 (1980).  Allowing attorney fees is never automatic, nor is it mandated simply upon a showing that one spouse has a slightly greater ability to pay the fees.  
In re Marriage Uphoff
, 80 Ill. App. 3d at 147.  The trial court considers the circumstances of the judicial proceedings and the identity of the spouse who precipitated the need for the current legal fees.  
Roth v. Roth
, 52 Ill. App. 3d 220, 228 (1977).  The trial court also considers the nature of the controversy, the complexity of the issues, and the significance of the subject matter.  
Green v. Green
, 41 Ill. App. 3d 154 (1976).

In 2000, Alisha's earned income was greater than Matthew's, and Matthew's financial circumstances were not so much better than Alisha's that he should be required to pay Alisha's attorney fees.  Further, we agree with the trial court that the expenses incurred were unreasonable considering the nature of the proceedings and the limited monetary resources of the parties.  The trial court did not abuse its discretion in declining to award Alisha payment for her attorney fees. 

CONCLUSION

For the foregoing reasons, we affirm as modified the judgment of the circuit court of Jackson County.

Affirmed as modified.

GOLDENHERSH and KUEHN, JJ., concur.

                                      NO. 5-01-0869

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

In re
 MARRIAGE OF ALISHA BOWLBY, )  Appeal from the

)  Circuit Court of

     Petitioner-Appellant, )  Jackson County.

) 

and )  No. 00-D-200

)

WILLIAM MATTHEW BOWLBY, )  Honorable

   )  David W. Watt, Jr.,

     Respondent-Appellee. )  Judge, presiding.

___________________________________________________________________________________

Opinion Filed
: April 25, 2003 

___________________________________________________________________________________

Justices
: Honorable Terrence J. Hopkins, P.J.

Honorable Richard P. Goldenhersh, J., and

Honorable Clyde L. Kuehn, J.,

Concur

___________________________________________________________________________________

Attorney
 Joni Beth Taylor, 1004 Walnut Street, P.O. Box 243, Murphysboro, IL 62966

for
 

Appellant
 

___________________________________________________________________________________

Attorney
 John D. Foley, P.O. Box 567, Murphysboro, IL 62966

for
 

Appellee
 

___________________________________________________________________________________

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 04/25/03.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.