2020 IL App (2d) 191144-U
No. 2-19-1144
Order filed November 25, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF JESSICA HAYES, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Petitioner-Appellee, | ) ) | |
| and | ) ) | No. 11-D-1541 |
| MOHAMMED EL SAYAD, | ) ) ) | Honorable Michael W. Reidy, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Presiding Justice Birkett and Justice McLaren concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court properly construed a prior court order to require Mohammed's additional support obligation to be calculated using increases in his net income; the Appellate Court held that the prior unreversed court order was the law of the case and affirmed the judgment.

¶ 2   Respondent, Mohammed El Sayad, appeals an order of the circuit court of Du Page County finding that he owed petitioner, Jessica Hayes, additional child support plus interest on bonus income that he earned between 2015 and 2018. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4 The parties were married on August 4, 2007. Two minor children were born of the marriage. The parties' marriage was dissolved on November 8, 2012. The judgment of dissolution of marriage (JDOM) incorporated the parties' marriage settlement agreement (MSA). Pertinent to this appeal, the MSA provided as follows.

"3.1 Mohammed shall pay to Jessica the sum of one thousand three hundred and twenty-one dollars per month ($1,321.00), as and for child support for the parties' children. Said support represents twenty-eight percent (28%) of Mohammed's net base income.

"3.3 In addition to the foregoing, Mohammed will pay to Jessica, as and for additional child support, a sum equal to twenty-eight percent (28%) of any and all net employment bonuses. The payments shall be made within ten (10) days of the date on which Mohammed receives said income. At the time of the payment to Jessica, Mohammed shall provide to Jessica all documents to substantiate the amounts of his gross income and to substantiate all deductions that he claims. The phrase 'net income,' as referred to herein, shall be, and is, defined as being the same 'net income' in Section 505 of the Illinois Marriage and Dissolution of Marriage Act and shall be calculated in accordance therein [*sic*]."

¶ 5                                    A. The March 3, 2015, Order

¶ 6 On May 23, 2014, Jessica filed a motion to increase child support. Jessica alleged that Mohammed's base net income was $56,857 when the JDOM was entered on November 8, 2012. Jessica alleged that Mohammed's total net base income for 2013 was $72,792. She alleged that this was a substantial change in circumstances entitling her to increased child support payments pursuant to section 3.1of the MSA.[1]

---

[1] In her prayer for relief, Jessica mistakenly asked for increased child support based on

¶ 7    On May 23, 2014, Jessica also filed a petition for contempt. Count III addressed additional income that she claimed Mohammed earned above the $56,857 that was used to set the amount of base child support. Specifically, for 2012, Jessica alleged that Mohammed earned total net income of $74,508 plus bonuses. Jessica alleged that Mohammed did not pay support on any income over $56,857, and that he thus owed an additional amount of $5016. For 2013, Jessica alleged that Mohammed owed an additional amount of $4524.

¶ 8    The court (Judge Cerne) held an evidentiary hearing on both Jessica's motion to increase child support and her petition for contempt. The appellate record contains the transcript of the court's oral February 18, 2015, ruling. Judge Cerne found that Mohammed's 2013 and 2014 increases in base net income were not a "substantial change" in circumstances.[2]

¶ 9    Regarding the petition for contempt, Judge Cerne found that, although Mohammed failed to comply with the JDOM, his noncompliance was not contemptuous. The judge issued a rule to show cause and then immediately discharged it. The judge commented that he was "not exactly sure how the bonus payment was defined" in the MSA. Judge Cerne then defined "bonus" as "any income that's above [Mohammed's] gross salary."

¶ 10    Judge Cerne explained how he calculated the additional support that was due. Essentially, the judge based his numbers on Mohammed's total net income. Judge Cerne calculated total net income by subtracting Mohammed's deductions from his total gross salary. Consequently, Judge

_____

Mohammed's gross 2013 salary of $106,182.

[2] While Jessica's motion to increase child support referenced only Mohammed's 2013 income, Judge Cerne included Mohammed's 2014 income in his ruling. Judge Cerne found that the 2013 increase was 3% and the 2014 increase was 5%.

Cerne's computations included increases in Mohammed's base salary. The judge gave the parties a copy of his computations. This was a plain sheet of paper containing handwritten arithmetic. Because this document became important in later litigation between the parties, we refer to it as the "Cerne paper."

¶ 11    Judge Cerne entered a written order on March 3, 2015. The written order required Mohammed to pay Jessica the sum of $2896 as additional support for 2013 and $2928 as additional support for 2014. The first paragraph of the order recited: "There has not been a significant change in [Mohammed's] base income to warrant a modification in his monthly child support obligation." The typewritten words in the second paragraph read: "All income reflected on Mohammed's pay stub shall be used for the purpose of calculating child support, including his increase in base income, paid time off, bonuses, and stock options." However, the typewritten words were modified by the insertion of handwriting and a handwritten strikeout. The words "his increase in base income" were crossed out. As modified, the second paragraph read: "All additional net income as reflected on Mohammed's pay stub shall be used for the purpose of calculating child support on bonus income, including paid time off, bonuses, and stock options."

¶ 12    The parties appeared before Judge Cerne on March 3, 2015. Mohammed's attorney sought clarification regarding the second paragraph of the written order. The judge indicated that he made the handwritten corrections to the proposed order: "I defined bonus income as income that [Mohammed] received in addition to his pay, which would have been his paid time off, bonuses, and stock options." Judge Cerne did not, however, recalculate the amounts due as additional child support. Even after Judge Cerne's handwritten modifications, he still ordered Mohammed to pay $2896 as additional support for 2013 and $2928 as additional support for 2014.

¶ 13    Mohammed filed a motion to reconsider. First, Mohammed argued that the court should have included the amount of State income tax that Mohammed paid in computing his net income. Second, Mohammed argued that paid time off should not have been included in bonus income. Third, Mohammed argued that Jessica did not request additional income for 2014. Fourth, Mohammed argued that, because of the ambiguity in the definition of "bonus," the court should not have issued a rule to show cause but should have found that Mohammed did not violate the JDOM. Fifth, Mohammed argued that his restricted stock should not have been included in the bonus calculation. Mohammed attached the Cerne paper as an exhibit to his motion to reconsider. Judge Cerne granted the motion with respect to the State income tax deduction but denied the remainder of the motion.

¶ 14                    B. The December 3, 2019, Order

¶ 15    On April 1, 2019, Jessica filed a two-count "second petition" for contempt in which she alleged in count I that Mohammed had not timely paid her child support on bonuses in 2015, 2016, 2017, and 2018. In count II, Jessica alleged that Mohammed underpaid his 2015, 2016, and 2017 bonus obligations pursuant to the formula that Judge Cerne set forth in the March 3, 2015, order, and that Mohammed failed altogether to pay his 2018 bonus support.

¶ 16    The court (Judge Reidy) held an evidentiary hearing on November 19, 2019. The parties stipulated to exhibits, with one exception. Jessica offered the Cerne paper into evidence, which was labeled Exhibit Z. Over Mohammed's objection, Judge Reidy took judicial notice of Exhibit Z and admitted it into evidence.

¶ 17    Mohammed testified that his base child support payments of $1321 per month are automatically withheld from his paycheck. He testified that he calculated his 2015, 2016, 2017, and 2018 bonus income using his last paycheck stub for each year. He then calculated his

additional child support payments using Judge Cerne's formula. Mohammed testified that he paid Jessica when he could afford it, rather than within 10 days of his receipt of his bonus income.

¶ 18    Jessica testified that she received base child support payments for 2015 through 2018. She testified that Mohammed did not pay additional child support on his bonus income in 2015. She testified that Mohammed disclosed his 2015 year-end pay stub to her, which indicated that he had received a pay raise and a bonus. Jessica testified that Mohammed received a raise and a bonus in 2016. She did not remember whether Mohammed paid her child support on his 2016 bonus. Jessica testified that Mohammed received a raise and a bonus in 2017. When her counsel asked her if she received child support on the 2017 bonus, Jessica replied, "Not that I remember." Jessica testified that she did not remember whether Mohammed paid her child support on his 2018 bonus income. However, she testified that she believed that Mohammed owed her $10,711.32 for unpaid child support on his bonuses from 2015 through 2018. On cross-examination, Jessica testified that she believed that child support payments were to be calculated using Mohammed's increases in his base income.

¶ 19    According to Jessica's trial memorandum, which was in evidence, she computed the amounts due for additional child support using Mohammed's total net income. Mohammed's attorney argued that, while Mohammed had calculated and paid additional child support according to Judge Cerne's formula, which used total net income, that formula was wrong, causing an overpayment. Mohammed's counsel argued that the correct formula was set forth by this court in *In re Marriage of Ackerley*, 333 Ill. App. 3d 382, 392 (2002). In *Ackerley*, this court computed child support on bonus income by first determining the amount of federal income tax due just on the bonus and then subtracting that deduction from the gross amount of the bonus to arrive at the net bonus. The percentage due for child support was then calculated on the amount of the net

bonus. In rebuttal, Jessica argued that Mohammed was attempting to change Judge Cerne's formula four years after Judge Cerne entered the March 3, 2015, order. According to Jessica, Mohammed presented no evidence that he paid the additional support that was due.

¶ 20　Judge Reidy first found that Mohammed's failure to pay additional child support within 10 days of its receipt was willful and contumacious. Judge Reidy next interpreted sections 3.1 and 3.3 of the MSA to mean that Mohammed was to pay support in the amount of 28% of his base income—"no matter what that is"—and 28% of his bonus income. Next, Judge Reidy interpreted the second paragraph of the March 3, 2015, order to mean that 28% of bonus income was to be calculated using increases in Mohammed's base pay. Judge Reidy found that Mohammed owed Jessica $10,711.32 plus interest. However, the judge also found that Mohammed's failure to pay was not contumacious.

¶ 21　On December 3, 2019, Judge Reidy entered a written order, as follows. As to count I of Jessica's motion, Mohammed was held in indirect civil contempt. As to count II, the court declined to issue a rule to show cause. Based upon payments that Mohammed made, which were not included in the court's oral ruling, the court ordered Mohammed to pay Jessica the sum of $8459 as additional support plus interest of $2296. Mohammed filed a timely notice of appeal.

¶ 22　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 23　Mohammed contends that his additional support obligation should be calculated using only his net bonus income, as this court did in *Ackerley*. In other words, Mohammed posits that his base salary increases are not subject to his additional child support obligation. Mohammed argues that Judge Reidy misinterpreted the MSA and Judge Cerne's March 3, 2015, order.

¶ 24　A judgment of dissolution and a marital settlement agreement are construed as a single agreement. *In re Marriage of Frank*, 2015 IL App (3d) 140292, ¶ 11. A marital settlement

agreement is construed like any other contract, and the court must ascertain the parties' intent from the language of the agreement. *Blum v. Koster*, 235 Ill. 2d 21, 33 (2009). The rules of contract interpretation apply. *Frank*, 2015 IL App (3d) 140292, ¶ 11. When an agreement is unambiguous, intent must be determined solely from the agreement's language. *Frank*, 2015 IL App (3d) 140292, ¶ 11. An ambiguity exists where the language is susceptible to more than one reasonable interpretation. *Frank*, 2015 IL App (3d) 141292, ¶ 11. If the agreement is ambiguous, the court may hear parol evidence to determine the parties' intent. *In re Marriage of Shulga*, 2019 IL App (1st) 182028, ¶ 23. If a contract is susceptible to two interpretations, courts prefer the one that is rational and probable. *Shulga*, 2019 IL App (1st) 182028, ¶ 23. The interpretation of a marital settlement agreement is a question of law, which we review *de novo*. *In re Marriage of Culp*, 399 Ill. App. 3d 542, 547-48 (2010). The trial court's findings as to the award of child support are within its sound discretion and will not be disturbed on appeal absent an abuse of that discretion. *In re Marriage of Boland*, 308 Ill. App. 3d 1063, 1066 (1999).

¶ 25    Section 3.1 of the MSA provides that Mohammed shall pay $1321 per month as child support, based on his net salary when the JDOM was entered. The parties have construed this section to mean that Mohammed's base child support obligation is fixed at $1321 per month. Jessica acknowledged that she received that amount of base child support.

¶ 26    Section 3.3 has four parts: (1) Mohammed shall pay "additional child support" equal to 28% of "any and all net employment bonuses," (2) Mohammed's payments shall be made within 10 days of the date that he receives said income, (3) Mohammed shall provide all documents to Jessica to substantiate (a) "the amounts of his gross income" and (b) all deductions that he claims, and (4) the phrase "net income" is defined as being the same as "net income" as used in section

505 of the Illinois Marriage and Dissolution of Marriage Act (Act) and shall be calculated in accordance with the Act.

¶ 27    The parties agree that "additional child support" means support in addition to the base support provided for in section 3.1. The parties also agree that the amount of additional support is 28% of any bonuses and that Mohammed must provide his financial documentation to Jessica to support his calculations. The parties further agree that Mohammed must pay additional support within 10 days of receiving it.[3]

¶ 28    However, section 3.3 does not define "bonus." Mohammed maintains that section 3.3 unambiguously states that a "bonus" is only that income that is above his net salary,[4] while Jessica argues that "bonus" includes increases in Mohammed's base salary. This issue was presented to Judge Cerne in Jessica's first petition for contempt, which was filed on May 23, 2014, and was resolved by the order of March 3, 2015. Mohammed argues that Judge Cerne defined "bonus" to include only paid time off, bonuses, and stock options. Mohammed asserts that this definition excludes salary increases. Indeed, Mohammed argues, Judge Cerne crossed out that portion of the second paragraph of the order that specified salary increases as part of bonus income.

¶ 29    However, as Judge Reidy noted, there was a dichotomy in Judge Cerne's ruling. Judge Cerne's calculations, which are memorialized in Exhibit Z, were based on Mohammed's total net income. That was apparent to Mohammed when Judge Cerne made his oral ruling, because the

---

[3] Mohammed does not contest the part of the December 3, 2019, order finding him in contempt for violating the 10-day provision.

[4] In his motion to reconsider Judge Cerne's March 3, 2015, order, Mohammed argued that the definition of "bonus" was ambiguous.

judge gave each party a copy of the Cerne paper. It was also apparent because Judge Cerne explained his calculations on the record in his oral ruling. When there is a conflict between the court's oral pronouncement and its written order, the oral pronouncement prevails. *In re Tr. O.*, 362 Ill. App. 3d 860, 868 (2005). Even after Judge Cerne made modifications to the draft written order, he did not change his calculations.

¶ 30    Yet, Mohammed did not raise that issue in his motion to reconsider, nor did he appeal the March 3, 2015, order. Rather, Mohammed testified, and his counsel argued, that Mohammed followed Judge Cerne's formula "to the letter" in paying additional child support. Generally, the failure to timely appeal from a circuit court order that is appealable as a matter of right renders that order the law of the case. *Commonwealth Edison Co. v. Illinois Commerce Comm'n.*, 368 Ill. App. 3d 734, 742 (2006). The law-of-the-case doctrine provides that where an issue has been litigated and decided, a court's unreversed decision on a question of law or fact settles that question for all remaining stages of the lawsuit. *People ex rel. Department of Public Health v. Wiley*, 348 Ill. App. 3d 809, 817 (2004).

¶ 31    Here, the March 3, 2015, order "fully and finally" disposed of Jessica's May 23, 2014, petition for contempt and was appealable. See *In re Marriage of Fink*, 275 Ill. App. 3d 960, 963-64 (1995) (trial court's orders that fully and finally disposed of party's request for permanent reduction in child support were final, appealable orders). Thus, despite Mohammed's counsel's 2019 disagreement with Judge Cerne's formula, Judge Cerne's 2015 ruling was the law of the case, and Judge Reidy did not misinterpret it.

¶ 32    Mohammed argues that this court's decision in *Ackerley* requires that support on bonus income be calculated using only net bonus income. *Ackerley* is factually inapposite. In *Ackerley*, the marital settlement agreement provided that the husband would pay base child support of $250

per week and additional child support equal to 25% of any "net bonus as defined by statute." *Ackerley*, 333 Ill. App. 3d at 385. "For verification purposes," the husband in *Ackerley* was required to provide the wife with tax-related statements "indicating the bonus he has received ***." *Ackerley*, 333 Ill. App. 3d at 385. Thus, in *Ackerley*, there was no indication that the additional child support should be calculated using total net income, as Judge Cerne found in the present case.

¶ 33 Finally, Mohammed argues, without citation to authority, that the inclusion of increases in his net income for purposes of calculating his additional child support obligation is an impermissible retroactive modification of his section 3.1 base support obligation. Mohammed correctly notes that, according to the version of the Act in effect when the MSA was entered, the court had no authority to retroactively modify child support. *In re Marriage of Henry*, 156 Ill. 2d 541, 544 (1993). However, as noted, the order of March 3, 2015, became the law of the case when Mohammed failed to appeal it. In turn, Judge Reidy's order of December 3, 2019, correctly interpreted Judge Cerne's March 3, 2015, order. Accordingly, we determine that Judge Reidy did not abuse his discretion in ordering Mohammed to pay additional child support plus interest.

¶ 34                                          III. CONCLUSION

¶ 35 For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 36 Affirmed.